UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. JOSEPH AARON WEINSTOCK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:05-CV-00174 (RMC) |
| ASIAN DEVELOPMENT BANK, JOHN DOE #1, JOHN DOE #2, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Joseph Aaron Weinstock ("Plaintiff"), a United States citizen, sues the Asian Development Bank ("ADB") and two unnamed co-workers (collectively, "Defendants") for injuries received when Defendants allegedly violated his constitutional rights by assisting in his arrest in the Philippines, intentionally making false and misleading statements regarding his professional training and experience, and denying him promotions. Pending before the Court is Defendants' Motion to Dismiss for lack of subject matter jurisdiction. The cornerstone of Defendants' argument is that, pursuant to the International Organizations Immunity Act of 1945 ("IOIA") and by order of the President of the United States, the ADB and its employees are immune from lawsuits such as Plaintiff's. Because this lawsuit does not fall into one of the narrow exceptions to Defendants' immunity, the Court finds that the ADB and its employees (1) are immune from this lawsuit, and (2) have not waived this protection. Accordingly, Defendants' Motion to Dismiss will be granted.

## I. BACKGROUND

Plaintiff is employed by the ADB in Manila, the Philippines, as an environmental specialist. Plaintiff's Complaint ("Compl.") ¶ 5, 10. The ADB is a development finance institution whose goal is to "foster economic growth and co-operation in the region of Asia and the Far East and to contribute to the acceleration of the process of economic development of the developing member countries. . . ." Agreement Establishing The Asian Development Bank, Dec. 4, 1965, art. 1, 17 U.S.T. 1418, 571 U.N.T.S. 123 ("ADB Articles").

Plaintiff's claims originate from a child-custody dispute with his former wife, a resident of Minnesota. According to Plaintiff, when two of his three children visited him in the Philippines during the summer of 1999, one child developed "serious health problems." Compl. ¶ 8. As a result, Plaintiff decided to keep that child in the Philippines until her health improved. *Id.* In response, Plaintiff's ex-wife initiated federal and state criminal proceedings against him. *Id.* ¶ 9. Because no extradition treaty exists between the Philippines and the United States, authorities in the FBI and the U.S. Embassy in Manila joined forces to seize his daughter "without any process" and apprehend Plaintiff. *Id.* ¶ 11. The two were returned to Minnesota. Though the federal charges were dropped, Plaintiff ultimately pleaded guilty to the state complaint. *Id.* ¶ 12.

Plaintiff makes an assortment of vague allegations. First, he claims ADB employees, whose identities are currently unknown, "aided and abetted the illegal arrest and deportation of Plaintiff and the illegal seizure of his minor child." *Id.* ¶ 13. Next, Plaintiff claims that, because of the ADB's "institutional bias against [him] as a 'deadbeat dad,' it was necessary to remove [him] as a potential problem." *Id.* ¶ 14. Plaintiff continues that he "has been denied promotions based upon false statements uttered with malicious intent . . . by Defendant[s] John Doe #1 and John Doe

#2   . . . ." *Id.* Plaintiff further alleges that Does No. 1 and 2 made similar statements when he applied for positions with other international development organizations. *Id.* Finally, Plaintiff claims that after filing an appeal with the ADB's Administrative Tribunal regarding the denial of a promotion in 2003, the ADB's Appeals Committee "denied to Plaintiff (I) the right to legal counsel in the proceeding and (ii) discovery of relevant documents related to Plaintiff's claims." *Id.* ¶ 15. Plaintiff's appeal was subsequently denied in 2004. *Id.*

Plaintiff's first three claims ask the Court to declare that Congress is without power to grant immunity to an organization, such as the ADB, that deprives Plaintiff of his "fundamental right to access to court" and "fails to maintain recognized standards of due process in its adjudicative actions." *Id.* at 6-9. In other words, Plaintiff seeks a declaration that the IOIA is unconstitutional and that Defendants are not immune from this action. In addition, Plaintiff seeks a judgment for damages for Defendants' denial of his request for promotion, *id.* at 9, and as compensation for Defendants' alleged violation of his Fourth and Fifth Amendment rights, *id.* at 10.

In response, Defendants have moved the Court to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendants' motion is premised on the argument that the IOIA and the ADB's Articles of Agreement confer upon the ADB and its employees immunity from all lawsuits that are unrelated to the organization's banking operations. Defs.' Mot. at 6. For this reason, Defendants argue that this Court lacks jurisdiction to adjudicate the case. The Court agrees.

## II. LEGAL STANDARD

"Jurisdiction is, of necessity, the first issue for an Article III court." *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981). Because federal courts have limited jurisdiction, "they lack the power to presume existence of jurisdiction in order to dispose of a case on any other grounds." *Id.* Pursuant to Federal Rule of Civil Procedure 12(b)(1), a federal court must dismiss a claim if it lacks subject matter jurisdiction to hear and decide the dispute. *Rochon v. Ashcroft*, 319 F. Supp. 2d 23, 27 (D.D.C. 2004); Fed. R. Civ. P. 12(b)(1). To avoid dismissal, subject matter jurisdiction must have existed on the date that the lawsuit was filed. *Arnold v. District of Columbia*, 211 F. Supp. 2d 144, 146 (D.D.C. 2002). The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). Nevertheless, the complaint must be construed liberally and a plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 625 (D.C. Cir. 1997).

## III. ANALYSIS

"Under international law, an international organization generally enjoys such privileges and immunities from the jurisdiction of a member state as are necessary for the fulfillment of the purposes of the organization, including immunity from legal process. . . ." *Restatement (Third) of Foreign Relations Law of the United States* § 467(1) (1987). These immunities are critical "to the growing efforts to achieve coordinated international action through multinational organizations with specific missions." *Mendaro v. World Bank*, 717 F.2d 610, 615 (D.C. Cir. 1983). In furtherance of this goal, Title 22, Section 288a(b), of the United States Code, more commonly known as the International Organization Immunity Act, provides that:

> International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

22 U.S.C. § 288a(b) (2000).

It is well established that statutes like the IOIA that grant immunity to foreign nations and international organizations limit the District Court's jurisdiction over parties that are entitled to such protection. *See, e.g., Atkinson v. Inter-American Dev. Bank*, 156 F.3d 1335, 1340-42 (D.C. Cir. 1998) (interpreting the IOIA). *See also Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 838 (D.C. Cir. 1984) ("The [Foreign Sovereign Immunity Act ("FSIA")] expressly deprives a court of jurisdiction over any party entitled to sovereign immunity."). Jurisdiction, therefore, is proper only if immunity has been waived. *See Atkinson*, 156 F.3d at 1337-39.

The Court finds Plaintiff's first three claims, which are based on the premise that the IOIA unconstitutionally limits this Court's jurisdiction, wholly without merit. It is axiomatic that Congress can limit the jurisdiction of the lower federal courts. *E.g., Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("Congress has the constitutional authority to define the jurisdiction of the lower federal courts. . . ."). One method by which it can do so, and which it employs quite frequently, is to provide by statute that the United States, foreign sovereigns, or certain entities are immune from suit in the district courts. *See, e.g.,* 22 U.S.C. § 288a(b) (codifying IOIA immunities); 28 U.S.C. § 1602 (codifying FSIA immunities); 42 U.S.C. § 11111(a)(1) (codifying Health Care Quality Improvement Act immunities). The codification of these immunities is not a constitutional violation. *See Tuck*, 668 F.2d at 550 (finding that the plaintiff's Fifth and Fourteenth Amendments claims did not trump the immunity granted to the defendant under the IOIA); *Ahmed v. Hoque*, No.

01 CIV. 7224 (DLC), 2002 WL 1964806, *7 (S.D.N.Y. Aug. 23, 2002) ("[T]he plaintiff has cited no authority to suggest a constitutional claim trumps the applicability of diplomatic immunity."). Indeed, this Court and the District of Columbia Circuit Court of Appeals have interpreted and applied the IOIA numerous times without questioning its constitutionality. *See, e.g.*, *Atkinson*, 156 F.3d at 1339-42; *Mendaro v. World Bank*, 717 F.2d 610, 617 (D.C. Cir. 1983); *Tuck*, 668 F.2d at 549-51; *Atlantic Tele-Network, Inc. v. Inter-American Dev. Bank*, 251 F. Supp. 2d 126, 132 (D.D.C. 2003).

Thus, whether this Court has jurisdiction over Plaintiff's remaining claims turns on two issues: (1) whether the ADB is immune from this Court's jurisdiction, and, if so, (2) whether that immunity has been waived.

**1. Immunity**

The ADB was "created in 1966 under Articles of Agreement by representatives of 31 countries, including the United States," Defs.' Mot. at 2. Pursuant to the Asian Development Bank Act, 22 U.S.C. § 285, the involvement of the United States with the ADB became official in 1966. The following year, by Executive Order, President Lyndon B. Johnson "designated [the ADB] as a public international organization entitled to enjoy the privileges, exemptions, and immunities conferred by the International Organizations Immunities Act." Exec. Order No. 11334, 32 Fed. Reg. 3933 (Mar. 7, 1967).

In addition to receiving immunity under the IOIA, the ADB's Articles of Agreement confer upon it "an international and intergovernmental status independent of any individual member country." Defs.' Mot. at 2. Specifically, in an effort to protect the ADB from the judicial processes of its member countries, the Articles provide that "the [ADB] shall enjoy immunity from every form

of legal process, except in cases arising out of or in connection with the exercise of its powers to borrow money, to guarantee obligations, or to buy and sell or underwrite the sale of securities." ADB Articles, art. 50, § 1. ADB employees are similarly shielded from lawsuits by the Articles, which provide "immun[ity] from legal process with respect to acts performed by them in their official capacity. . . ." *Id.* art. 55, § 1. The immunities provided in the Articles of Agreement have been incorporated into the United States Code. *See* 22 U.S.C. § 285g.

Thus, pursuant to the IOIA and Title 22, Section 285g, of the United States Code, the ADB and its employees are immune from the Court's jurisdiction in this case. By enacting the IOIA and incorporating the ADB's Articles of Agreement into the United States Code, Congress has expressly conferred a grant of immunity on the ADB, which effectively eliminates this Court's power to hear Plaintiff's claims.[1]

**2. Waiver**

The remaining question is whether the ADB's immunity has been waived or limited in this case. The Court finds that it has not been waived or limited. Pursuant to the IOIA, immunity can be limited in two ways: "(1) the organization itself may waive its immunity and (2) the President may specifically limit the organization's immunities when he selects the organization as one entitled

---

[1] The Court rejects Plaintiff's argument that Congress has not chosen to limit Defendants' liability in this matter. The only authority Plaintiff cites, *Holy Trinity Church v. United States,* is readily distinguishable. Unlike that case, where the literal interpretation of a statute did not honor the spirit of the law, a strict reading of the ADB's immunity statute clearly evinces Congress's intent to shield the ADB from lawsuits, except in specific circumstances. *Holy Trinity Church v. United States*, 143 U.S. 457 (1892). Moreover, Plaintiff's contention that the restrictive immunity found in the FSIA evidences Congress's intent to punch holes the IOIA's immunity shield is refuted by this Circuit's precedent. *See Atkinson*, 156 F.3d at 1340-42 (noting that in creating the IOIA, "Congress' intent was to adopt [foreign sovereign immunity law] only as it existed in 1945 – when immunity of foreign sovereigns was absolute.").

to enjoy the IOIA's privileges and immunities." *Dujardin v. Int'l Bank for Reconstr. and Dev.*, 2001 WL 584173, 9 Fed. Appx. 19, 20 (D.C. Cir. May 22, 2001). However, when President Johnson designated the ADB as an international organization, he did not limit the immunity conferred upon the organization in any way. Furthermore, the ADB has only waived its immunity in "cases arising out of or in connection with the exercise of ADB's powers to borrow money, to guarantee obligations, or to buy and sell or underwrite the sale of securities." ADB Articles, art. 50, § 1.

At its core, this case is an employment dispute that clearly does not fit into the limited category of actions that are excepted from the ADB's immunity provisions. *See Lutcher S. A. Celulose e Papel v. Inter-American Dev. Bank*, 382 F.2d 454, 459 (D.C. Cir. 1967) ("The Asian Bank Agreement explicitly reserves immunity except for certain situations, which are specifically spelled out."). None of the allegations levied by Plaintiff relates to the ADB's banking operations; rather, the allegations are based entirely on his employment relationship with the ADB. This factor alone does not give this Court jurisdiction over the ADB. *See Mendaro*, 717 F.2d at 615 ("One of the most important protections granted to international organizations is immunity from suits by employees . . . in actions arising out of the employment relationship."). Plaintiff's "dissatisfaction with the efficacy of the administrative remedy [offered by the ADB] is insufficient to dissolve" Defendants' immunity as an international organization or create an exception through which the Court can retain jurisdiction. *Id.* at 616 n.41.

### IV. CONCLUSION

Congress has expressly granted the ADB immunity from Plaintiff's suit by way of the IOIA and Title 22, Section 285g, of the United States Code. Because the ADB has not waived its immunity in this case, the Court does not have jurisdiction over Plaintiff's claims.

Accordingly, Defendants' Motion to Dismiss will be **GRANTED**.

A separate Order accompanies this Memorandum Opinion.


Dated: July 13, 2005                                         /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge